FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**

2010 FEB -1 AM 11: 58

OFFICE OF THE CLERK

| | | |
|---|---|---|
| JULIE L CARPER | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL D CARPER | ) | *4:10cv3017* |
| JACK W BESSE | ) | |
| Knapp, Fangmeyer, Aschwege Besse | ) | |
| and, Marsh, Attorneys, PC | ) | |
| Attorneys PC. | ) | |
| | ) | |
| Defendants | ) | |

### COMPLAINT OF LAW AND EQUITY

NOW COME the Plaintiff, JULIE L CARPER, a single person (hereinafter "JCARPER"), as Pro se, and complaining of the Defendants Michael D Carper (hereinafter MCARPER) License #18292 and Jack W Besse, (hereinafter Besse) License # 19005 as members of the Nebraska State Bar Association, and acting in accordance as attorneys in a Dissolution Petition under guidance of State of Nebraska Judicial Branch, including the 5th District Court of Nebraska, Hamilton County under presiding Judge Michael Owens in which evidence in the matter is self-contained in Case #08-0679, (referenced below are exhibit numbers from case file).

### PARTIES

Pursuant to Fed. R. Civ. P. 10(a), Plaintiff, Julie L Carper, Pro Se, P.O. Box 1321; Kearney, NE 68848 (308) 293-9021.   Defendants, Michael D Carper; 15 West 22nd Street; Kearney, NE   68847 (308) 236-2090; Jack W. Besse; 1323 Central Avenue; Kearney, NE 68848 (308) 236-6441, employed and partner with Knapp, Fangmeyer, Aschwege, Besse and Marsh, PC.

Statement of Claims/ Complaint alleges as follows:

## **PRELIMINARY STATEMENT**

This is an action for compensatory, punitive and injunctive relief arising from slander, libel, defamation in an effort to ruin reputation with business and family relationships constitutional violation of parental rights; interference on parental rights through dissolution proceedings through the 5th District Court of Nebraska, Hamilton County with Pleadings filed in the 9th District Court of Nebraska, by documented pattern as a Prima facie case with sufficient evidence contained in case 08-0679 and including correspondence from Department of HHS, court, representation, distributed memorandums to other public entities. The essential elements to prove Slander/ libel are based on these facts:

1.     **Statements and communication were made**     (a)Statements of bipolar diagnosis and treatment, a mental disease to the court, claims so outlandish as a mental condition and unfit to parent. (b) Statements were made in a judicial proceeding (c) Statements were presented to various third parties, including court; psychologist, schools and other professionals (d) Statement of bipolar claims were published in psychologist report (e) Published memos were sent to schools (f) Statements were published in Defendants affidavits (g) Affidavits were made in bad faith, manufactured around the bipolar claims. (h) Legal pacer report system posted allegations for other legal peers, legal community to view with husband as an attorney, highly viewed controversial case.

2.     **Full knowledge of statement.** Defendants, as attorneys had full knowledge of the statements (a) Attorney's intentionally misused the legal system to gain advantage

2

(b) Communication and declaration of such statements imputes a serious crime of moral turpitude and breach of the legal system (c) Defendants as attorneys, have full knowledge of the laws and intent (d) Attorneys worked in collusion in an effort to manipulate the outcome

3.      **Intent of Slander/ Libel Statements** (a) Intent of the statements were to gain control of custody and marital assets (b) affidavits were used as a scare tactic, form of legal bullying (c) Intent was a loss of custody as primary parent, the only way to gain control for Defendant (d) Intent was to misuse the orders and legal knowledge of the system in an effort to harass with contempt charges and defame (e) Misuse of the civil process to punish, using children as a pawn (f) Intent was to use award of custody as a form of revenge and public embarrassment by sending memos to schools (g) Intent of statements made to school was to undermine parental authority, rights and reputation (h) Intent was to manipulate the system, including filing of false police reports in an effort to make a false paper trail of behaviors. (i) Intent of false statements were to make other allegations of emotional abuse, using the Department of Heath and Human Services, a misrepresentation of fact.

**4. Actions of Statements.** (a) Slanderous. libel statements were intentional resulting in an effort to obtain custody and maintain control of marital home and assets (b) Actions were made through the judicial system such as loss of custody, exclusion from marital residence without due process; less than reasonable visitation, threatened suspension; and suspension of visitation without due process (c) Actions resulted in diminished relationship with children in which court actions made the Plaintiff look less than favorable with children (d) Various actions of  misrepresentations of fact were submitted

3

to the court to undermine parental authority, harm relationships with children and business reputation (e) Actions of sealed document of allegations gave court a false impression of fact (f) Actions of Attorneys, based on oath and duty of office, carried weight without evidence and finding of fact.

**5.    Harm from Statements**    (a) Communications which exposes Defendants manipulation, control and hatred and made false impressions with court.  Bipolar claims illustrates Defendants hatred and effort to manipulate the system (b) Communications made reflected negatively on Plaintiff's character, morality and integrity with public, court system, and children (c) Communications which suggest that JCarper suffered from a mental defect that causes others to refrain from associating with Plaintiff, including children (d) Harm from actions and statements interfered with constitutionally protected parental rights, receiving less than reasonable visitation (e) Damage has been sustained through the actions of the court and that the lies and statements were malicious and immature, words which were actionable in respect to special damages sustained by the party slandered.

<u>JURISDICTION</u>

This Court has original jurisdiction over this matter pursuant to 42 USC 1983 which gives the United States District Courts original jurisdiction of all matters arising under the laws under the United States.  Court also has ancillary jurisdiction over the remaining Nebraska state claims in this Complaint, of Tort of Slander and Libel, pursuant to 42 U.S.C. § 1983 : US Code - Section 1983: Civil action for deprivation of rights.  Civil action for deprivation of rights for the other claims are so related to the federal question claims that they form part of the same case or controversy under

Amendment 14 of the United States Constitution. Plaintiff claims federal jurisdiction pursuant to Article III § 2 which extends the jurisdiction to cases arising under the U.S. Constitution.

## VENUE

Venue is proper in this Court under 28 U.S.C. 1391(b)(1) and (2), for all Defendants reside in this District, and a substantial part of the acts and/or omissions that are the subject of this suit occurred in this District.

## FACTUAL BACKGROUND-

Sept 08, Plaintiff filed action for Dissolution. Plaintiff was primarily stay at home mother with three children, 1991, 1993 and 2001. All three children were born out of wedlock. Plaintiff filed an action of paternity and in 1993 moved to Denver due to lack of interest from children's father. Plaintiff placed the interest of the children ahead of her own and did not obtain full time work until after the third child was in school full time. Plaintiff has never displayed irrational emotional distressing behaviors, no record, or history of such behaviors, which are medically classified as a serious disease and categorized as a medical disability. Petitioner and Respondent moved in together in 1997 and subsequently married after third child was born Dec 2001. Divorce Decree acknowledges Plaintiff as the primary parent. Husband is an attorney and with his knowledge of the law had gained control of custody and marital assets. Husband files his Affidavit with Order to Exclude referencing "doctor" and other harsh flash words citing emotional distress, commonly known in divorce proceedings as a game of revenge. Affidavits were primarily used as a scare tactic and gain control of custody. Husband drafted Affidavits and signed by the two oldest children "my dad is my friend"

5

various supporting affidavits as a form of collusion in an effort to gain custody, within the Order to Exclude Affidavit. Based on fact, the only way MCarper could win custody was through slander, and manufacturing affidavits based on the false claims. Counsel Besse assisted in the slander by projecting the statements to the court in an effort to win, fervently protect client.

Carper in the capacity as a business owner, legitimate public figure with business reputation, intention harmed business and family relations. Husband as an attorney and public figure misused the system, placed the case on an online pacer system so fellow piers would continually review the case, false allegations, in which as stated by Besse "eyes of buffalo county" were looking. Defamation, irreparable harm to business in small community, where news travels fast. Carper is public figure as business owner of a real estate brokerage firm, making an impact upon the community, with business success reached in May 2008 as top 10% real estate sales nationwide, with more than 40 listings, more than any individual broker in the town.

## EVIDENCE WITHIN THE CASE

Evidence of S  Affidavits were formulated as a scare tactic to settle out of court, since more than 50% settle out of court, is was a form of legal bullying, no negotiation no cooperation, maintaining a status of keep away both from the children, home and money. Within the affidavits slander/Libel claims were made, which resulted in and interference of parent rights are noted below:

1. Oct 30 08 MCarper Affidavit P2 – Julies current income is a mystery to me, have no knowledge of business income and expenses, tax return illustrates MCarper prepares returns. Misrepresentation of fact.

6

2. Oct 30 08 MCarper Affidavit page 3 – para 9 complete fabrication. "I don't think she has ever discussed it with her doctor" referencing irrational behaviors. Slander/ libel.  Doctor reference was later discovered that MCarper made statements to the court of treated and diagnosed bipolar.

3. Oct 30 08, M Carper Affidavit, page 4, para F, is a complete fabrication "displayed temper tantrums and tirades along with various erratic behaviors averaging one to two times every ten to fourteen days.  This statement gives the impression that Plaintiff can not even live in society without some sort of criminal record, or other outside behavioral actions, no where is there evidence of such. Comments made of bipolar diagnosis and treatment which is a serious claim and mental disease, an impairment which is classified as disability.  Comments with no evidence or finding of fact.  Comments made to look as if JCarper was unfit for society, with such ridiculous allegations impaired the enjoyment of children, livelihood and business reputation.  Respect was lost by actions, spoke and written in a judicial proceeding.  Statements made so ridiculous that JCarper during this same time frame made top 10% real estate sales nationwide.

4. Oct 30 08 MCarper P 6 refused marriage counseling, evidence from counselor stating Carper attend 9 of the 13 sessions, MCarper only 4.

5. Evidence 62 page 11   Dr. Meidlinger report   " much has been made in the context of this evaluation about Mike's comments that she has been diagnosed and treated for bipolar disorder in the past. Perhaps are few comments are about this in the order"   In my opinion Julie's history and behavior do not qualify her for a diagnosis of bipolar disorder.  Remaining comments reflect the stress

JCarper under went during the false claims, exclusion from home without cause, Herzog v. Campbell, 47 Neb. 370, 66 N.W. 424 (1896). Nelson v. Rosenberg, 135 Neb. 34, 280 N.W. 229 (1938).

6. Feb 27 09 Objection to Plaintiffs request for expanded visitation. This illustrates the control and manipulation MCarper is utilizing with the court, it is Parental interference trying to maintain the slanderous bipolar behavior claims.

7. Feb 27 09 Objection Affidavit page 4 para 5 – having Lea practice writing I want to live with my mommy" statement shows irrational thinking that a child can love both parents and that MCarper wants to control the wants and needs of child to be with her mother.

8. Feb 27 09 MCarper Objection Affidavit P3 "based on upon Julie's actions Zion School officials have indicated to me that they prefer that she not show up a school dismissal."      Reference Dec 08 memo to Zion Lutheran school, illustrating that MCarper is playing both ends of the situation, libel from the affidavits to the court and libelous statement to the schools.  Memo states that Carper is not allowed to pick up daughter Lea for health and safety reasons and maintaining a list of people who are allowed to pick her up, except the mother. Kearney Public School Policy evidence provides that non-custodial parent has same rights at school (refer policy 5200.1, adopted 9/9/09) including pickup of children without interference, a policy which Besse should be aware of as a school board member.  Health and safety comment is public embarrassment with false insinuations of harm to child. Interference to parental rights to be allowed to pick up own child.

9. Lea late for school claim, if you look at the calendar for Dec 08 dates are inconsistent with claims to court.

10. Feb 27 09 MCarper Opposition Affidavit page3, "Department of Heath and Human Services Collette Evans discussing supra in para 7 "I believe that is in the best interest of Lea that Julie's weekend visitations be restricted and supervised by a disinterested third party to prevent any further emotional abuse upon Lea." Another form of libel used in an affidavit.

11. Mar 9 09 Letter to Monika Anderson from Besse, in reference to MCarper statements in Objection Affidavit   "a copy of page 3 and a reading of the paragraph in question very clearly reflects that it is Mr Carper making the statement and not Ms. Evans."  Again attorney Besse  playing both ends, intent to deceive the court, affidavit made in bad faith, fraud misrepresentation, libel slander statements,

12. Feb 27 09 Objection for expanded visitation page 5, contact me regarding Julie's emotional abuse of the kids....believed her mother was causing emotional abuse. Letter from dated February 2 2009 both parents under investigation in which any claims of abuse are "unfounded" HHS claims were fabricated, both parents received same letter, under statute no one person is named in the report.   MCarper received the same letter by statute however withheld that information to the court, deception.  HHS letter Feb 2 09 was received by both parents, and Feb 27 09 Opposition Affidavit by MCarper failed to include letter to reflect false statements of emotional abuse to the court. Libel/ Slander, Misrepresentation of Fact.   Substantial evidence supports HHS policy and

9

procedures, including overview of steps followed for abuse claims. Failure to disclose, fraud, misrepresentation of fact.

13. Mar 9 09 letter to Monika Anderson False claims by Besse as a two month investigation from HHS on irrational behaviors. HHS does not investigate parents behaviors. Slander/ libel.

14. June 26 09 Affidavit in Opposition to Additional Summer Visitation as a form of revenge, denial of basic parental rights for equal time. MCarper maintains the false bipolar claims in an effort to control relationships. *Troxel v. Granville, 530 U.S. 57 (2000) Stanly v. Illinois 405 US 645, 92S Ct 108, 31 L ed2nd 551 (1972*

15. Recordings of intentional parental interference, abuse, and discussions of MCarpers drinking habits. A) Rules don't talk about mom, Feb 13, 2009  B) Mom's not important anymore Nov 14 2008  C) Mom is not a good parent Jan 3, 09   D) Lea describes Mike's drinking (signs of drinking indicates abusive behaviors) E) Recording of Lea "dad wants to put the pain on me."

16. Mar 31 09 letter from Besse to representation M.Piccolo "your client has promised to take Lea to ....religious education events, but then neglected to do so"    Apr 1, 09 letter from M Piccolo to Besse noting "it occurs to me that Mr. Carper has not been completely forthright and honest with you in regarding the allegations contained in this letter.   The accusations set out ... are incorrect....confirm that Lea missed more than six .... Classes... under Mike's care.   Mar 09 order from court threatens to revoke visitation due to false claims by MCarper and Besse. Judges comments to revoke visitation is based on first

impression of the behaviors and continued to influence judges decisions from the false claims. Slander, Fraud, Deceit.

17. Evidence of text messages from Kim illustrate evaporating relationship, letter dated Mar 26 09 recommending counseling for Kim and anger issues. Affidavit filed in Mar 09 Opposition to Counseling filed by MCarper. Failure to work in best interest of children, working the false biopolar claim in relationships. *Stanly v. Illinois 405 US 645, 92S Ct 108, 31 L ed2nd 551 (1972). Quilloin v. Walcott, 434 U.S. 246 (1978)*

18. 28 May 09 letter from Chief of police is fraud, e 57 previous June 09 affidavit shows signed copy, e 57 is unsigned. Police would never threaten or sanction it is a violation of rules and laws, can not trespass on own property, Carpers name is on the deed.

19. Apr 21 09 email from MCarper to Besse with cc attachment. "Jack: Attached is more FYI for your reading pleasure... guess whose name or picture does not appear as a realtor...or appraiser...I guess she must be out of business. MDC" Purpose of email illustrates intent to do harm to business, ruin business reputation, a pleasure in noting that income is not being earned and business. Fitzgerald v. Young, 89 Neb. 693, 132 N.W. 127 (1911). Mar 09 Affidavit by MCarper makes notations to the court that Carpers behaviors are effecting her business with willful disregard, taking fulfillment in the damage to business repuration and in the Final Decree wanting to partake in a share of the award from anti-trust law suit.

20. Various set ups of permission, then files contempt charges in an effort to misuse legal system to harass and create harm. May 09 email giving permission for summer visitation and Jun 09 MCarper files Complaint for Contempt charges.

21. Court used the Sherriff on August 11 with intent to harass and evict Plaintiff, in which sheriff Neil Miller quoted the judge "do whatever it takes," which more than six sheriffs were in the yard with the intent to harass. Stay was denied as evidence in court documents, final decree notes stay was denied.   The do whatever it takes was based on Defendants comments of bipolar behavior, and temper without any substantial evidence, judge allows sheriff to take custody of Lea without order to show cause and right to stay.    Incident caused great emotional harm to Lea in which she believes dad has lots of power for the wrong things.  Defendant and court fail to note that incident was resolved by force and not fact. Uhing v. Uhing, 241 Neb. 368, 488 N.W.2d 366 (1992);

## COUNT I

## SLANDER/ LIBEL

There are five essential elements to prove slander.  Current evidence illustrates the intent of the parties to 1- harm with reckless disregard for the truth. Facts can not be defended as opinions and statements made were not of innocent dissemination. Both MCarper and Besse, as attorneys they had 2- full, actual knowledge of the defamatory statement and court acted upon those statements.  Lack of knowledge can not take precedent in harsh claims with the intent to undermine reputation with business and family.  3- proof statement was made Carper has proven that the information was spoken to psychologist, Dr. Meidlinger, and published in the Oct 08

Exclusion Affidavit and Dr. Meidlinger report, court based actions on those claims, the Defendants were dramatically and directly involved with the defamatory claims by their actions, memorandums and letters showing collusion. 4- Remarks were made specifically at ruining Carpers reputation with business and family, and in Meidlinger report it illustrates that the published information is false and plaintiff has no signs of any bipolar behavior. Clearly defendants are at fault by evidence of record.

Libel or slander; how sufficiently pleaded; burden of proof

## COUNT II

## PERJURY, FRAUD, DECEIT

Perjury, fraud, deceit are the same ingredients made from slander and libel, it injures the character and reputation of the person defamed. Evidentiary Statements were reckless disregard of the truth in order to win undermine, gain control and custody and financially ruin Carper. *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) White v. Ardan, Inc., 230 Neb. 11, 430 N.W.2d 27 (1988). §25-839.

Included within the Slander/ Libel facts are also (1) Misreprensentations of fact with HHS information, (2) Misuse of the law; (3) abuse of the process of law and focuses upon misuse of the legal process to obtain a collateral advantage not directly involved in the proceeding itself. SeeVolk, supra, 474 N.W.2d at 43; Stoner, supra, 446 N.W.2d at 751; Prosser & Keeton, The Law of Torts 898 (5th ed. 1984). Attorneys took advantage of oath of office to control and manipulate the outcome. (4) Affidavits made in bad faith *§25-1336 Affidavit made in bad faith. False affidavit and* §28-915.01 False statement under oath or affirmation; penalty and affidavits used as a scare tactic to in order to gain control. Affidavits which are illogically written not reflective of a rational

educated attorney, with flash words used "charged with emotional abuse," "parading around town with dogs," "having Lea practice writing "I want to live with my mom." (5) Fraud Under Nebraska § 3-501.0. Terminology, has purpose to deceive, deception practiced in court, reference Exh #40 and Exh #72 as fraud, letter from police captain submitted as an exhibit in June 09 with signed copy (6) Deceit commonly practiced and projected to the court by false statements, ie Meidlinger report states Carper did not attend daughters graduation with evidence of commencement brochure and photos, illustrate fact. Deceit which placed Carper continually on the defensive. (7) Perjury, under Nebraska statute § 28-915 Perjury State v. Douglas, 222 Neb. 833, 388 N.W.2d 801 (1986). The false statements were made under oath or equivalent affirmation during a judicial proceeding. (8) Collusion, under Nebraska statute §7-106 Deceit or collusion; using evidence from HHS which illustrate collusion, drafting children's affidavits with Besse to notarize as collusion, both fail to act as an officer of the court and abide by ethics, collusion by Besse acting as a zealous advocate for his client (9) False allegations of abuse as a form of libel/ slander, reference mar 09 09 letter from Besse (10) Continual use of the police department and sheriffs department to live out the claims of bipolar behavior, anyone can call the police to make false claims, reports were continually filed by MCarper.

## INTENTIONAL PARENTAL INTERFERENCE

Parental interference was intentional with false Bipolar claims. Interference set to deny custody and maintain a distant relationship with children based on false claims. Zion Lutheran memo sent to deny basic parental contact and proper relationship, documented pattern of evidence is noted within the dissolution process including

recordings, drawings, affidavits stating there is a lack of communication from MCarper, not following custodial duties in an effort to undermine relationships, refusal to work in the best interest of children, counseling etc. <u>U.S.C.A. Const.Amend. 14</u>. *Hodgson v. Minnesota, 497 U.S. 417 (1990), Troxel v. Granville, 530 U.S. 57 (2000)*

Actions by the court and Defendant intentionally created an adversarial relationship, interfering with the parent-child bond, not working in the best interest of the children, Failing in the standard of equity, procedural fairness, denial of parental rights *Stanley v Illinois, 405 US 645 (1972)*

Evidence from defendant of parental interference and court fails to recognize; frustration of parental visitation rights; Decree also notes that defendant has to communicate, evident that there has been frustration and court fails to resolve the issue. (1) Christmas, January 09 Denial of visitation, frustration of visitation noted in affidavit, (2) School memo to Zion, citing health and safety intent to harm relationships, defamation, slander, affidavit citing school telling her to stay away, intent to play both ends, sending memo and affidavit in bad faith. (3)School records showing illustrating that there is no parent attendance when children are sick at home and custodial parent has other children stay from school in order to watch the youngest, (4) no notification or non-custodial assistance with absences are allowed by custodial parent (5) Lack of communication rights of non-custodial parent (6) failure to inform on Doctor visits, school activities by custodial parent (7) Information on outside, extra curricular activities is continually denied, numerous requests made to the court of lack of communication from Defendant (8) Police reports illustrate emotional abuse, drawings in which court references leas drawing with commentary no value on case.  Ignores issues of abuse,

neglect (9) Letter from Kearney Police captain of trespass is a form of harassment, denial of property rights and fraudulent, illustrates defendants protective, non cooperative behaviors, failure to work in best interest of children for supplies and needs (10) Recordings from youngest daughter illustrating defendants intention to severe family ties with children. "mom is unfit," "don't talk about the bad parent" and recordings of physical abuse "dad wants to put the pain on me" Evidence which was not allowed by court, but allowed by law under §27-1007 Rule 1007 (11) Various motions and pleadings which illustrate frustration with court as to visitation, denial of visitation, and how civil system was used to punish and not cooperative or resolve issues   (12) Ignoring the basic non-custodial rights in which custodial parent is continually non-cooperative and communicative. (13) Misuse of the Wilson v Wilson (1987), 224 Neb. 589 standard as a form to punish and dictate not allowing reasonable visitation, less than 30%. Final Decree now has twenty four days less visitation rights than Temporary Order. Failing in the standard of equity, procedural fairness, denial of parental rights *Stanley v Illinois, 405 US 645 (1972)*

## PUNITIVE DAMAGES

Damages are actual in the claim for slander/ libel claims, damages which resulted in loss of interest in maintaining competitive edge in business, willingness to work business with emotional distress of loss of custody based on false claims, displacment out of the home based on order to exclude, having children look agt parent as less than favorable, continual court actions to harass, continual battel for basic rights of reasonable visitation, diminshed relationship with children from harm caused by

16

MCarper and Besse collusive attacks, various contemtps and false claims in order to win.

Punitive damages to be awarded. Actions from both Defendants MCarper and Besse conduct is determined to be willful, malicious and fraudulent, exceeding the legal criteria for mere or gross negligence because they are attorneys, full knowledge of the law, live under a stringent code of ethics and respect of oath of office, and misuse of the law to gain an advantage. Punitive damages should involve awards over and above the compensatory damage award. Punitive damages would serve as a punishment to attorneys who misuse the system with the intention to victimize a person in an effort to win, or settle out of court, displaced from society with harm to business and family relationships. Punitive damages would deter other attorneys to misuse the system in the same manner and from committing actions similar to the defendant's conduct (Black's Law Dictionary, Prosser & Keeton Torts, 5th Edition,1984).

Loss in wages, distress based on causes of actions, the courts have allowed both compensatory and punitive damages. Rafferty v. Scott, 756 F.2d 335 (4th Cir. 1985)

Mental distress over loss of custody, affidavits made in bad faith; interference on parental rights. Justification is placed by fact that  a number of jurisdictions have upheld a cause of action brought by a non-custodial parent for interference with visitation rights under the theory of intentional infliction of mental distress, Bhama v. Bhama, 425 N.W.2d 733 (Mich. Ct. App. 1988); Pankratz v. Willis, 744 P.2d 1182 (Ariz. Ct. App. 1987); Sheltra v. Smith, 392 A.2d 431 (Vt. 1978).

Mental Distress over wrongful exclusion from residence, without due process, loss of property rights, actions which children viewed as mom must be a criminal; children look less favorable upon a parent when the other parent has done harsh actions in an effort to win. Statements made through memos to the schools, refusals for counseling, false allegations of abuse and friviolous court actions intentionally deteriorated relationships. - *Santosky v. Kramer, 455 U.S. 745 (1982)*

Mental distress inflicted upon children, especailly youngest child of eight years which has illustrated in drawings and pictures emotional distress and has made several recordings of intentional severance of relationship. Punitive damages are sought for proper counseling as ordered through the court.

Mental distress of loss of relationships based on fact that one court has recognized the tort of "interference with visitation" without resorting to the more commonly accepted "mental distress" theory. Ruffalo v. United States, 590 F.Supp. 706 (W.D. Mo., 1984).

Particular facts of the case involve intentional interference from the court system and custodial parent, by failure to be honest and trustworthy, misuse of the court system to inflict a vendetta scheme and the court system failing to abide by rules of evidence and due process. By fact the United States Court of Appeals for the Second Circuit recently held that whether or not the tort of visitation interference would be recognized should be left to the state court for its determination in light of the domestic relations exception to federal jurisdiction. The court also stated that the validity of the tort should be based on the facts of each particular case. Minot v. Eckardt-Minot, 13 F.3d 590, 594 (2d. Cir.1994).

Petitioner is hereby seeking a minimal of $300,000 for distress, loss of wages, irreputable harm, counseling for children.

## PLAINTIFF DEMAND TRIAL BY JURY

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES

Claims have not been presented through any other administrative procedure due to the fact that both Defendants are attorneys, administrative procedures can not assess the punitive damages or compensatory damages noted within the Complaint.

RESPECTFULLY SUBMITTED: I have read the above complaint and it is correct to the best of my knowledge.

**VERIFICATION**
**I declare under penalty of perjury that the foregoing is true and correct.**

Julie Carper
Pro Se, Petitioner, Plaintiff
PO Box 1321; Kearney, NE 68848
(308) 293-9021

19